PEOPLE ex rel. McAULEY v. WAHLE, City Magistrate, et al.

(Supreme Court, Appellate Division, First Department. March 20, 1908.)

FOOD—"OLEOMARGARINE"—CRIMINAL PROSECUTIONS—PRELIMINARY PROCEEDINGS.

Agricultural Law, Laws 1893, p. 660, c. 338, art. 2, § 20, defines oleomargarine as any article or substance in the semblance of butter not the usual product of the dairy, and not made exclusively of pure and unadulterated milk or cream, or (2) any article or substance into which any

oil, lard, or fat not produced from milk or cream enters as a component part. Section 26 (page 663), as amended by Laws 1894, p. 870, c. 426. Laws 1897, p. 810, c. 768, and Laws 1902, p. 986, c. 385, provides that any person manufacturing, selling, etc., any substance in imitation or semblance of butter, shall be deemed guilty of a violation of the agricultural law, whether he sells such substance as butter, oleomargarine, or under any other name or designation whatsoever. Depositions on which a warrant charging a violation of said section 26 was issued showed that relator sold an article called "Oleomargarine," consisting of a small brick of white substance wrapped in paper, and labeled "Oleomargarine." There was no statement that the article imitated or was in semblance of natural butter. The chemist who analyzed the substance deposed that it was not natural butter, nor of the color of natural butter produced from pure milk or cream, etc., but was what is commonly known as oleomargarine. *Held*, that the depositions negatived the fact that the substance was an imitation or in semblance of natural butter, and disproved the essential facts necessary to constitute the crime.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 4957, 4958; vol. 8, p. 7737.]

Appeal from Special Term.

Habeas corpus by the people, on the relation of Archibald McAuley, against Charles G. F. Wahle, city magistrate, and others. From an order dismissing the writ, relator appeals. Reversed, and relator discharged.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

William C. Breed, for appellant.
Saul J. Dickheiser, Deputy Atty. Gen., for respondents.

INGRAHAM, J. The relator was arrested on the 30th of October, 1907, by the defendant Caffney, a police officer in the city of New York, upon a warrant issued by the defendant Wahle, city magistrate of the city of New York, charged with a violation of section 26 of article 2 of the agricultural law of the state of New York (chapter 338, p. 663, Laws 1893, as amended by chapter 426, p. 870, Laws 1894, chapter 768, p. 810, Laws 1897, and chapter 385, p. 986, Laws 1902. The relator claims that he was illegally held because the deposition upon which the warrant was issued failed to show that he had violated section 26 of the agricultural law, and that the warrant was therefore null and void. From the return of the police officer it appears that he received a warrant signed by the defendant, a city magistrate, requiring him to arrest the defendant; that, in pursuance to that command, he arrested the relator, and before he was arraigned before the magistrate this writ of habeas corpus was served upon him, and, in pursuance of the command of this writ, he produced the body of the relator before the court. The city magistrate also made a return, from which it appeared that he issued a warrant upon certain depositions which were made a part of the return charging the relator with a violation of section 26 of article 2 of the agricultural law. From these depositions it appeared that the relator at the premises No. 502 East Sixteenth street, borough of Manhattan, in said county, did on October 22, 1907, sell, keep for sale, and offer for sale an article, substance, and compound made, manufactured, and produced from animal fats and

animal or vegetable oils, not produced from unadulterated milk or cream from the same, to wit, the article known as "Oleomargarine," in violation of section 26 of the agricultural law of the state of New York; that on that day the deponent went to said premises, and there met the relator, and asked him whether he had any oleomargarine for sale, and the relator stated to the deponent that he had the best quality of oleomargarine, and then and there produced from a case in plain view of the deponent a small brick of white substance which was wrapped in an oiled paper, which paper was labeled "Oleomargarine"; that the relator stated that he would sell the package so marked for the sum of 20 cents, and the deponent thereupon paid to him the price asked in lawful money of the United States, and the relator thereupon delivered to the deponent the said package which was labeled "Oleomargarine." There was also submitted a deposition of a chemist from which it appeared that the deponent received from the former deponent on October 22, 1907, a brick of substance wrapped in oiled paper and labeled "Oleomargarine"; that said substance was pearl white, and without color; that he analyzed the said substance and found the same to be what is commonly known as "Oleomargarine"; that the same was not natural butter, nor of the color of natural butter produced from pure unadulterated milk or cream, or both, which has a yellowish hue. In reply the relator alleged that the facts stated in the said depositions do not constitute a crime. By article 20 of the agricultural law (chapter 338, Laws 1893) oleomargarine is defined to be "any article or substance in the semblance of butter * * * not the usual product of the dairy and not made exclusively of pure and unadulterated milk or cream; or (2) any article or substance into which any oil, lard or fat not produced from milk or cream enters as a component part, or into which melted butter or butter in any condition or state, or any oil thereof, has been introduced to take the place of cream." Article 26 provides that:

"No person by himself, his agents or employees * * * shall sell, keep for sale or offer for sale any article, substance, or compound made, manufactured, or produced in violation of the provisions of this section, whether such article, substance or compound shall be made or produced in this state or elsewhere; [and] any person manufacturing, selling, offering or exposing for sale any commodity or substance in imitation or semblance of butter the product of the dairy, shall be deemed guilty of a violation of the agricultural law, whether he sells such commodity or substance as butter, oleomargarine or under any other name or designation whatsoever."

What would seem to be prohibited by this statute is the manufacture or sale of an article known as "Oleomargarine," or any article or product in imitation or semblance of natural butter, made or manufactured out of or from any animal fat or vegetable oil not produced from unadulterated milk or cream of the same. By section 20 of the act the term "Oleomargarine" is defined to be "any article or substance in the semblance of butter * * * not the usual product of the dairy, and not made exclusively of pure and unadulterated milk or cream; or (2) or any article or substance into which any oil, lard or fat not produced from milk or cream enters as a component part."

In People v. Marx, 99 N. Y. 377, 2 N. E. 29, 52 Am. Rep. 34, the

Court of Appeals, in construing a statute which provided that "no person shall manufacture out of any oleaginous substances, or any compound of the same, other than that produced from unadulterated milk or of cream from the same, any article designed to take the place of butter or cheese produced from pure unadulterated milk or cream of the same, or shall sell or offer to sell the·same as an article of food," held that the prohibition of this statute applied to an article designed to take the place of dairy butter or cheese; that "the object and effect of the enactment under consideration was not to supplement the existing provisions against fraud and deception by means of imitations of dairy butter, but to take a further and bolder step, and by absolutely prohibiting the manufacture or sale of any article which could be used as a substitute for it, however openly and fairly the character of the substitute might be avowed and published, to drive the substituted article from the market, and protect those engaged in the manufacture of dairy products against the competition of cheaper substances capable of being supplied to the same uses as articles of food"; and that this prohibition violated the provisions of article 1, § 1, Const., which provides that "no member of this state shall be disfranchised or deprived of any of the rights and privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers," and section 6 of article 1 of the Constitution, which provides that no person shall be deprived of life, liberty, or property without due process of law, and also the provision of the fourteenth amendment of the Constitution of the United States; that these constitutional principles were violated by an enactment which absolutely prohibited an important branch of industry for the sole reason that it competes with another, and may reduce the price of an article of food for the human race. So that, if this statute is to be construed as prohibiting the manufacture or sale of oleomargarine, it is void as a violation of these constitutional provisions. The learned Deputy Attorney General, however, insists that these depositions, in substance, charged the defendant with the sale of an article or substance in imitation or semblance of natural butter, and that, I think, is the only question. From these depositions it appeared that the relator sold an article called "Oleomargarine," which consisted of "a small brick of white substance which was wrapped in an oiled paper, and which was labeled "Oleomargarine." There was no statement by the purchaser of this article that it imitated or was in semblance of natural butter. The chemist to whom the purchaser of this article delivered it for analysis deposed that he received from the purchaser a brick or substance wrapped in oiled paper and labeled "Oleomargarine," and that such substance was pearl white and without color; that he analyzed the substance, and found it to be what was commonly known as "oleomargarine"; that the same was not natural butter, nor of the color of natural butter produced from pure and unadulterated milk or cream, or both, which has a yellowish hue. It seems to me that this deposition negatives the fact that this substance was an imitation or in semblance of natural butter, but, on the contrary, that it was just what it purported to be, oleomargarine, and the essential facts necessary to constitute the crime were therefore ex-

pressly disproved by the deposition. In People v. Arensberg, 105 N. Y. 123, 11 N. E. 277, 59 Am. Rep. 483, the Court of Appeals by Judge Rapallo, who delivered the opinion in People v. Marx, supra, on an appeal from the conviction of a person who was indicted for unlawfully, willfully, and knowingly having in his possession for sale, and causing and procuring to be sold to certain persons a number of pounds of a certain article and product made and manufactured in semblance and imitation of natural butter, under the provisions of a statute which prohibited the manufacture out of any animal fats or vegetable oils not produced from unadulterated milk or cream from the same, or any product in imitation or semblance or designed to take the place of natural butter produced from milk, etc., held that the statute was constitutional; that a person manufacturing or selling oleomargarine may be legally required to sell it for and as what it actually is, and upon its own merits, and are not entitled to the benefit of any additional market value which may be imparted to it by resorting to artificial means to make it resemble dairy butter in appearance, that the statutory prohibition is aimed at a designed and intentional imitation of dairy butter, and that there was sufficient evidence to authorize the jury to find that the oleomargarine sold by the defendant was by artificial means, not essential or incident to the manufacture of the article, but resorted to for the mere purpose of imitation, made to resemble dairy butter, and for that reason the judgment was affirmed.

There is no case cited by the learned Deputy Attorney General which holds that the sale of oleomargarine is or can be prohibited by law; and it seems to us that, as these depositions expressly negative the fact that this article was actually manufactured "in imitation or semblance of butter, the product of the dairy," the relator was entitled to be discharged.

It follows that the order appealed from must be reversed, and the relator discharged. All concur.