### PEOPLE v. SCHINTZIUS.

(Supreme Court, Special Term, Erie County.   December 5, 1908.)

1. FOOD (§ 16*)—OLEOMARGARINE—ACTIONS—SUITS TO ENJOIN SALE—PROOF.

    Under Agricultural Law (Laws 1893, p. 658, c. 338) § 10, permitting the unlawful sale of oleomargarine to be enjoined upon proof by affidavit that defendant was guilty of the violation alleged in the complaint, and section 6 (page 657), making every certificate, duly signed and acknowledged, of a chemist employed by the Commissioner of Agriculture presumptive evidence of the facts stated therein, a certificate by a chemist was inadmissible in injunction proceedings under section 10; sworn statements being the only proof admissible.

    [Ed. Note.—For other cases, see Food, Dec. Dig. § 16.*]

2. FOOD (§ 16*)—STATUTORY REGULATIONS—SUITS TO ENJOIN SALE—SUFFICIENCY OF EVIDENCE.

    On a motion to enjoin the sale of oleomargarine under Agricultural Law (Laws 1893, p. 663, c. 338) § 26, prohibiting the manufacturing of oleomargarine, or any article in imitation of natural butter, or to keep or sell such articles, where the only evidence was that the oleomargarine bought from defendant looked and smelled like natural butter, but no foreign substances were added to give it the appearance of dairy butter, and it was labeled "oleomargarine" and was manufactured under the federal pure

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

food law under the inspection of federal authorities, there was nothing to show an infringement of the statute, and the sale should not be enjoined.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 16.*]

Suit by the People of the State of New York against William J. Schintzius for a penalty for violation of law forbidding sale of imitation butter, in which the People moved to enjoin defendant from further sales. Motion for injunction denied.

Charles B. Moulthrop, for the People.
Charles A. Pooley, for defendant.

WHEELER, J. The plaintiff moves for an injunction, pursuant to section 10 of the agricultural law (Laws 1893, p. 658, c. 338), to restrain the sale of oleomargarine or butterine in violation of sections 26, 27, and 29 of what is known as the "Agricultural Law" of the state of New York (Laws 1893, pp. 663, 664, c. 338), in an action brought against the defendant to recover a penalty for alleged violations of the sections referred to. The plaintiff's affidavits disclose that agents of the Agricultural Department of the state visited the place of business of the defendant on the Elk Street Market, in the city of Buffalo, and purchased a pound package of a substance, sold as "Butterine," which "looked to deponent like and smelled like natural butter, the product of the dairy." The affidavits show that the bricks so purchased were submitted to analytical chemists. One of the chemists certified that one of the samples submitted to him contained a percentage of curd. The other chemist certified that the sample submitted to him contained "artificial color." The evidence of any foreign substance in the articles in question rests upon the certificates of the chemists making the analysis.

The defendant, on this motion, insists that these certificates cannot be considered by the court in the disposition of this motion, for the reason that section 10 of the agricultural law provides that the court shall grant an injunction only "on proof, by affidavit, that the defendant has been guilty of the violation alleged in the complaint," and that the unverified certificates of the chemists do not meet the requirements of the act. Counsel for the people relies on section 6 of the act, which provides that:

"Every certificate, duly signed and acknowledged, of a chemist, analyst, or other expert employed by the Commissioner of Agriculture, * * * shall be presumptive evidence of the facts therein stated."

The remedy by injunction in this class of cases is an unusual one, and depends upon the express provision of the statute, and we are of the opinion that the people are entitled to a preliminary injunction only where the necessary proof of violation is supplied "by affidavit." It was the evident intention of the Legislature to require in such case sworn statements, rather than a mere certificate, as the basis of an injunction. The consequences to follow from the granting of an injunction are so serious that the section relating to the granting of injunctions expressly required proof "by affidavit," so that the affiant

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

could be prosecuted for perjury in case of intentional false swearing. In the disposition of this motion we must, therefore, eliminate from our consideration the certificate of the chemists.

In this connection, however, it becomes our duty to briefly state the facts as presented on the part of the defendant. By affidavits read on his behalf it appears that the "oleomargarine" in question was manufactured by William J. Moxley, of Chicago, Ill.; that it is manufactured under the inspection of the United States authorities under the provisions of what is known as the "Pure Food Law" of Congress; that the tax imposed by said act is one-quarter of one cent per pound for oleomargarine free from artificial coloring, and ten cents per pound for oleomargarine containing artificial coloration; that attached to the box from which the samples in question were sold is the official certificate of the United States inspectors to the effect that the contents contained no artificial coloration. It further appears that, when the samples were sold to the state inspectors, they were taken from this box, and that each sample or brick was wrapped in cheesecloth and also in a paper wrapper, on the outside of which was stamped the name of the defendant, his address, and the word "Oleomargarine," and the number of pounds the package contained.

The people's counsel, however, contends that, independent of the statements contained in the chemists' certificates, the people are entitled to an injunction because it appears by the affidavits of the two inspectors who purchased the "oleomargarine" from the defendant "that the same looked to deponent like and smelled like natural butter, the product of the dairy," which fact is not challenged by the defendant in his opposing affidavits. The first portion of section 26 of the agricultural law provides as follows:

"No person by himself, his agents, or employés, shall produce or manufacture out of or from any animal fats or animal or vegetable oils not produced from unadulterated milk or cream from the same, the article known as oleomargarine or any article or product in imitation or semblance of natural butter produced from pure, unadulterated milk or cream of the same, or mix, compound with or add to milk, cream or butter any acids or other deleterious substance or any animal fats or animal or vegetable oils not produced from milk or cream, so as to produce any article or substance or any human food in imitation or in semblance of natural butter, nor sell, keep for sale or offer for sale any article, substance or compound made, manufactured or produced in violation of the provisions of this section, whether such article, substance or compound shall be made or produced in this state or elsewhere."

The counsel for the plaintiff insists that the defendant has offended the provisions of the section quoted, and the injunction should therefore be granted. The defendant's counsel challenges this position, and it remains for the court to examine some of the leading cases, and determine whether, from the decisions of the courts when applied to the facts as presented on this motion, the people are entitled to the injunction asked.

One of the earlier cases in which the right to manufacture and sell oleomargarine was involved was the case of People v. Marx, 99 N. Y. 377, 2 N. E. 29, 52 Am. Rep. 34. This case involved the validity of the provisions of section 6, c. 202, p. 256, Laws 1884, which absolutely forbade the manufacture and sale of "oleaginous substances

or any compound of the same, other than produced from unadulterated milk or cream from the same, any article designed to take the place of butter or cheese," etc. The Court of Appeals pronounced the act unconstitutional. A very able and exhaustive opinion by Judge Rapallo was rendered, in which he said that the prohibition of the statute was not against the imitation or simulation of butter, but against the manufacture of any product designed to take the place of butter; that in so doing the Legislature violated the provisions of the United States Constitution, providing that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the law"; and that one of the fundamental rights and privileges of any American citizen is the right to adopt and follow such lawful industrial pursuit, not injurious to the community, as he may see fit. The court therefore held that, inasmuch as oleomargarine contained no deleterious substance injurious to the health of the consumer, its manufacture and sale could not legally be prohibited.

After the rendering of this decision by the Court of Appeals, the Legislature passed another act aimed at the manufacture and sale of oleomargarine, being section 7, c. 183, p. 340, of the Laws of 1885, entitled "An act to prevent deception in the sale of dairy products," etc. That section prohibited (1) the manufacture out of any animal fat, or animal or vegetable oils, not produced from unadulterated milk or cream from the same, any product in imitation or semblance or designed to take the place of natural butter produced from milk, etc.; (2) mixing, compounding with, or adding to milk, cream, or butter any acids or other deleterious substances, or animal fats, etc., with design or intent to produce any article in imitation or semblance of natural butter; (3) selling, or keeping, or offering for sale any article in violation of the provisions of this section. It will be noted that the provisions of this act are substantially the same as the provisions of sections 26, 27, and 28 of the present agricultural law, which it is claimed the defendant in this action is violating. In the case of People v. Arensberg, 105 N. Y. 123, 11 N. E. 277, 59 Am. Rep. 483, the statute again came before the Court of Appeals for its consideration. The defendant was convicted of selling oleomargarine in violation of the act of 1885. The article sold, the proof in the case showed, contained coloring matter introduced for the purpose of causing the article sold to resemble natural butter. The Court of Appeals sustained the conviction, and Judge Rapallo again spoke for the court in a lengthy and able opinion. It is upon this decision the people chiefly rely upon this application.

In the Arensberg Case the court said that the prohibition of the statute was aimed "at a designed and intentional imitation of dairy butter, in manufacturing the new product, and not at a resemblance in qualities inherent in the articles themselves and common to both." It was argued in that case that if, in the essential ingredients or elements, the two articles were so identical that they must necessarily present the same appearance without resort **to artificial** means to pro-

duce resemblance, in that case it would be competent for the Legislature to require that some means be resorted to by the manufacturer to distinguish the new article from the old, besides requiring the package sold to be distinctly marked, such as by giving oleomargarine a different and distinguishing color from ordinary dairy butter. The Court of Appeals, however, declined to pass upon that question, because it found in the particular case then under consideration ample evidence of an intention to simulate dairy butter by the addition of artificial coloring matter introduced into the oleomargarine for that purpose alone. In this case, however, the court did say, referring to oleomargarine, that:

"If it possesses the merits which are claimed for it, and is innocuous, those making and dealing in it should be protected in the enjoyment of liberty in those respects; but they may legally be required to sell it for and as what it actually is, and upon its own merits, and are not entitled to the benefit of any additional market value which may be imparted to it by resorting to artificial means to make it resemble dairy butter in appearance." Page 129 of 105 N. Y., and page 278 of 11 N. E. (59 Am. Rep. 483).

In the case of People v. Meyer, 44 App. Div. 1, 60 N. Y. Supp. 415, a judgment against the defendant for a penalty for an alleged violation of the argicultural law for selling oleomargarine was reversed because of an omission in the people's proof "to show that the appearance of oleomargarine in its natural condition differed from that of the substance which the defendant sold as butter, or, in other words, that the oleomargarine had been changed in some manner to make it look like butter." To the same effect is the case of People v. Wahle, 124 App. Div. 762, 109 N. Y. Supp. 629, decided by the Appellate Division, First Department, in March, 1908.

I am not aware of any decision of the courts of this state in any way modifying the rules of law as above expressed. The substance of these decisions is that the manufacture and sale of oleomargarine is lawful and cannot be constitutionally prohibited, but that the Legislature may, and has, legally required that it shall be sold for what it is, and not for dairy butter, and that in making such sales foreign substances shall not be added to it for the purpose of making it resemble dairy butter. The moving affidavits on which an injunction is now asked (outside the chemists' certificates, which we cannot now consider) simply state that the defendant sold an article marked "oleomargarine" which Dr. Grant, the Assistant Commissioner of Agriculture, swears "looked like and smelled like natural butter, the product of the dairy." Inspectors Carr and Earl each make a similar affidavit. There is no competent proof before the court as to the composition of the article sold by the defendant. There is no affidavit that oleomargarine looks or should look any different from the article sold by the defendant. There is no proof that the product sold by the defendant was not the natural result of the inherent qualities of the constituent parts which entered into its manufacture. There is no proof that any foreign or artificial product was added to give the article sold the appearance of dairy butter. There is an entire absence of any evidence of an attempt to deceive the buyer or the public by a simulation of butter. On the other hand, it appears the article sold

by the defendant was manufactured under the inspection of the United States government officials; that there was on the box from which the package was sold the official certificate of that inspection; that it was sold for oleomargarine, and nothing else, under the provisions of the United States statutes.

In view of these facts, the people have failed to make out a case for the issuing of an injunction. The plaintiff's motion is therefore denied, with $10 costs of the motion.