(73 Misc. Rep. 408.)

### PEOPLE v. GUITON et al.

(Supreme Court, Trial Term, Albany County.　September, 1911.)

1. FOOD (§ 1*)—REGULATION OF BUSINESS.

The Legislature cannot constitutionally prohibit the manufacture and sale of oleomargarine, except so far as it is made to simulate some other substance, and deceive the public.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. FOOD (§ 8*)—SALES OF OLEOMARGARINE—PROHIBITION.

Agricultural Law (Consol. Laws 1909, c. 1) § 38, prohibiting the manufacture and sale of any article in imitation of natural butter, produced from pure unadulterated milk or cream, prohibits only the sale of oleomargarine which is made to resemble butter in appearance.

[Ed. Note.—For other cases, see Food, Cent. Dig. §§ 1, 7, 8; Dec. Dig. § 8.*]

3. FOOD (§ 8*)—SALES OF OLEOMARGARINE—ACTION FOR PENALTY—EVIDENCE.

Where, in an action to recover a penalty for violation of Agricultural Law (Consol. Laws 1909, c. 1) § 38, on a complaint that defendant grocers sold oleomargarine in imitation of butter, the article sold was free from artificial coloring, and was branded as required by the agricultural law, and was a natural selection of natural ingredients mixed in a natural way and subjected to natural processes, the complaint would be dismissed.

[Ed. Note.—For other cases, see Food, Cent. Dig. §§ 1, 7, 8; Dec. Dig. § 8.*]

Action by the People against John J. Guiton and Patrick C. Reilly to recover penalty for violation of the agricultural law.　Complaint dismissed.

Thomas Carmody, Atty. Gen., and Henry Hirschfeld, for the People.

Breed, Abbott & Morgan (William C. Breed, of counsel), for defendants.

COCHRANE, J.　Section 38 of the agricultural law, so far as applicable to this case, prohibits the manufacture "out of or from any animal fats of animal or vegetable oils not produced from unadulterated milk or cream from the same, the article known as oleomargarine or any article or product in imitation or semblance of natural butter produced from pure unadulterated milk or cream of the same," and also prohibits the sale of such article.

The defendants are grocers and kept for sale and sold oleomargarine, as is claimed, in violation of said statute, because it was "in imitation or semblance of natural butter."　This statute, as construed and limited by the courts, has been repeatedly held to prohibit only the sale of oleomargarine which by artificial or deceptive means is made to resemble butter in appearance.　The absolute prohibition of the manufacture and sale of the article is unconstitutional.　People ex rel. McAuley v. Wahle, 124 App. Div. 762, 109 N. Y. Supp. 629; People v. Meyer, 44 App. Div. 1, 60 N. Y. Supp. 415; People v. Bremer, 69 App. Div. 14, 74 N. Y. Supp. 570; People v. Simpson, Craw-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ford Co., 62 Misc. Rep. 240, 114 N. Y. Supp. 945, affirmed 133 App. Div. 889, 118 N. Y. Supp. 1132; People v. Schintzius, 61 Misc. Rep. 410, 113 N. Y. Supp. 313. "It (the statute) was evidently intended to meet those cases where oleomargarine was manufactured with the intent that it should resemble natural butter and which sold as such." People v. Bremer, supra.

[1] "It is settled that the Legislature cannot constitutionally prohibit the sale of oleomargarine except so far as the product is made to simulate some other substance and thereby deceive the people." People v. Meyer, supra.

[2] In People v. Simpson, Crawford Co., 62 Misc. Rep. 240, 114 N. Y. Supp. 945, affirmed 133 App. Div. 889, 118 N. Y. Supp. 1132, it was said:

"So far as the statute may be construed as absolutely prohibiting the manufacture and sale of oleomargarine, it is unconstitutional; and it only becomes valid when construed as prohibiting the sale of oleomargarine which, by artificial means, is made to resemble butter in appearance. People v. Wahle, 124 App. Div. 762 [109 N. Y. Supp. 629]. The Supreme Court of the United States has held that oleomargarine is a well-known, wholesome food product, and a legitimate subject of interstate commerce. Schollenberger v. Pennsylvania, 171 U. S. 1 [18 Sup. Ct. 757, 43 L. Ed. 49]. A person manufacturing or selling oleomargarine may be legally required to sell it for and as what it actually is, and upon its own merits; and he is not entitled to the benefit of any additional market value which may be imparted to it by resort to artificial means to make it resemble dairy butter in appearance. The statutory prohibition is aimed at a designed and intentional imitation of dairy butter, in manufacturing and selling the oleomargarine, and not at a resemblance in qualities inherent in the articles themselves and common to both. People v. Arensberg, 105 N. Y. 123 [11 N. E. 277, 59 Am. Rep. 483]."

[3] There is no element of fraud or deception or unfairness in this case. The article in question was exposed for sale and sold as oleomargarine. It was conceded at the trial that it was sold in conformity with the federal statutes "free from artificial coloration," and that it was labeled and branded as required by the agricultural law. Disregarding this concession, however, the evidence fails to show any effort or design to produce a substance "in imitation or semblance of natural butter." The parties agree as to the component parts of oleomargarine. It consists of oleo oil, cotton seed oil, neutral oil, cream, milk, and butter. It was established at the trial that these substances in their natural and initial state are mostly yellow, but are sometimes bleached by chemical processes or, as the result of age and by an appropriate selection of such ingredients with reference to color, a lighter or darker shade of oleomargarine may be produced. It was proved that a certain large manufacturer of oleomargarine systematically and designedly selects light colored ingredients with a view to producing a light colored product, and that thereby a product is produced which is described as "cream white," and that it is lighter in color than the oleomargarine in question. But there is no evidence that the manufacturer of the latter product made any conscious selection of ingredients with reference to color, or that there was any manipulation of such ingredients in the manufacture of the oleomargarine in question, or that the element of color as a factor in such manufacture ever en-

tered the mind of the manufacturer. In fact, the process of selection was by the other manufacturer in an effort to produce a lighter colored oleomargarine which it was claimed was a superior article. As far as the evidence discloses, there was in the oleomargarine in question a natural selection of natural ingredients compounded and mixed in a natural way and subjected to natural processes in order to form a natural product. The evidence does not even establish that the product of the manufacturer of the article in question has a uniform color. A different question would arise if it appeared that the oleomargarine in question had been made with a view to have it resemble butter, even though such result had been effected solely by a conscious and intentional selection of materials with that end in view, and without the insertion of any distinct coloring matter.

The learned Attorney General, however, contends that it is incumbent on the manufacturer to make selection of light colored ingredients, or otherwise to take affirmative steps to see that his product does not resemble butter; in other words, that the manufacturer must resort to artificial and unnatural methods in order to produce an article which will not resemble butter. The claim is made that it is not sufficient that the product shall be advertised and announced and published to the public, the purchaser, and to the consumer as oleomargarine, as the law now requires, but it must also, by a resort to artificial methods, be made in such a manner that it will not have a butter color. It seems to me that all that can reasonably be required is that the manufacturer shall refrain from deceptive methods, and that, if he has honestly selected the initial materials for his product and has honestly compounded the same so as to produce an honest product without reference to its color, the law is satisfied. It is to be observed in this connection that there is a very wide range of color in butter, depending on the breed of cattle, the diet on which they feed, the season of the year, the process of manufacturing, the age of the butter, and perhaps other conditions. It also appears that there has been an increasing demand of late years for lighter colored butter, and some manufacturers are catering to that demand, and producing lighter colored butter without artificially coloring it. To what extent must the manufacturer of oleomargarine resort to artificial and unnatural methods in an effort to create a product which shall not be "in imitation or semblance of natural butter"? It is comparatively easy to prevent him from resorting to artificial methods in an effort to create a semblance to butter. But it is correspondingly difficult to require him to resort to such artificial and unnatural methods in an effort to differentiate from butter in its semblance or appearance. How can it be determined in any particular case where the characteristic color of butter ends and the color of oleomargarine may properly begin? Each case might be left to a jury to determine with reference to those particular facts, but there could be no uniformity of decisions on such a question and no safety for a manufacturer. It would be well nigh impracticable for him to conduct his business. Nor is there any necessity for such drastic legislation. The only legitimate purpose of the statute is to prevent deception. This pur-

pose is or may be effectuated by statutes requiring each seller, including the restaurant keeper, to appropriately announce the fact that he is selling oleomargarine. I think the question here raised is involved, although not discussed, in the case of People v. Simpson, Crawford Company, supra. In that case the oleomargarine in question resembled butter not only in color, but in taste and smell as well. But the judgment in favor of plaintiff was reversed because it did not satisfactorily appear that any foreign coloring matter had been used for the purpose of creating a semblance to butter. If the position of the Attorney General on this question is sound, there should have been an affirmance in that case. And in all the cases above cited it seems to have been assumed that the purpose, or at least the effect, of the statute was merely to prevent a dishonest effort to simulate butter. In People v. Marx, 99 N. Y. 377, 386, 2 N. E. 29, 52 Am. Rep. 34, it was held that the absolute prohibition of the oleomargarine industry was a violation of the principles of liberty guaranteed to the individual by the Constitution. I think it is equally unconstitutional to accomplish indirectly the same result by unnecessarily restricting and harassing the individual so as to make it practically impossible, or at least unnecessarily difficult, for him to pursue such industry; and that I think would be the practical effect of giving to this statute the significance claimed for it in this case. I am of the opinion, therefore, that the plaintiff has failed to establish a cause of action.

Complaint dismissed, with costs.